[No. 124.   Decided March 13, 1891.]

## E. P. CADWELL v. W. H. BRACKETT.

### CONTRACT — EVIDENCE.

In an action by plaintiff to recover for services in superintending the construction of defendant's buildings, where plaintiff makes no definite statement of the manner of his employment by defendant, and the evidence shows that plaintiff was under contract with defendant's architects at a stipulated price per day to superintend the construction of certain buildings, including those of defendant, and that defendant was to make up to the architects any deficiency that might exist in plaintiff's wages after the architects had appropriated therefor a certain per cent. they were to receive on the other buildings, a judgment for plaintiff is unwarranted.

*Appeal from Superior Court, Kittitas County.*

The facts sufficiently appear in the opinion.

*Frederick Bausman,* and *Galusha Parsons,* for appellant.

*Welsh & Warner,* and *Reavis & Mires,* for appellee.

The opinion of the court was delivered by

DUNBAR, J.— From a careful investigation of the evidence in this case, we are unable to arrive at the conclusion reached by the lower court. It is true that Brackett testified that he was employed by Cadwell to superintend his

building, but makes no definite statement as to the manner of his employment, while he admits he came to Ellensburgh under contract with Proctor & Dennis at a stipulated price of six dollars per day. Cadwell, on the other hand, who, for all the record shows, is entitled to as much credit as Brackett, and whose interest is the same, testifies positively that he never employed him at all; that all the contract or understanding he ever had concerning his work was with Proctor, and that the agreement with him was that he (Cadwell) would make up to Proctor & Dennis any deficiency that might exist to bring Brackett's wages to six dollars per day after they had appropriated a certain per cent. that they were to receive on other buildings; and that, in consideration of such deficiency being made up to them, Brackett was to superintend the construction of his (Cadwell's) buildings, in common with the other buildings which Proctor & Dennis were under contract to superintend in Ellensburgh. This statement of Cadwell's is explicitly corroborated by Proctor, who, in his direct testimony, says:

"The defendant was to pay the deficiency that might accrue from the proceeds of our work on the other part of it. You [meaning defendant] were to make that up, so that we would not lose anything by bringing Brackett up here at six dollars per day."

He also testifies that when he put Brackett to work on their buildings, under their contract with him, the defendant's buildings were included in the lot; nor can we see anything in the cross-examination of the witness that substantially affects his direct testimony. The testimony of the witness Lloyd might seem to support the theory of the plaintiff. His testimony, admitted by the court as rebutting testimony, was as follows:

"There was one interview between Cadwell, Proctor and myself, in which Mr. Proctor desired to make some arrangement for a superintendent. He stated he could

not furnish a superintendent, as his contract did not contemplate a superintendent; and in discussing the matter something was said with reference to compensation, and Mr. Proctor said that, generally, the services of such a man was worth $10 or $12 a day, but he thought in this case the better way was to prorate the expenses among the different buildings, and he intimated that he thought about two per cent. would be about the compensation on the sort of the building."

Conceding that this testimony is literally true, it does not appear that Cadwell responded in any way, or that the "intimation" resulted in a contract, and in no way disputes the testimony that Cadwell and Proctor afterwards agreed on the terms which they both swear to. Tending to weaken plaintiff's claim is the testimony of his successor in the work, Mr. Paul, who swears that when Brackett quit work he told witness that Cadwell owed him $40 or $50, and said that he would not pay him, and that he was going to sue him if he did not pay it. Counsel for appellee in his brief says that the testimony of Mr. Paul is indefinite, but it seems to us about as definite as any testimony in the case. We do not see any force in the argument of appellee that the exhibits and testimony show that Cadwell treated and recognized Brackett as superintendent; for Cadwell does not deny that Brackett superintended his work, but claims that he did not employ him, and that he was to pay Proctor & Dennis for his services, not at the rate of two per cent. on the value of the buildings, but according to the contract testified to by him. The superintendent's duties would be the same under either theory of employment, and Cadwell would have a right to give him the same recognition and authority under one theory as he would under the other. It appears from the testimony that another arrangement was afterwards made between Brackett and Proctor & Dennis in regard to Brackett's compensation, but it does not satisfactorily appear that this new arrangement was ever

brought to the knowledge of Cadwell, but, on the contrary, it does appear that when it came to his knowledge that Brackett was intending to hold him responsible for his services, he immediately discharged him. From the whole testimony, it seems to us that Brackett has already received more than he was entitled to under his contract, and that he ought not to recover anything against the defendant in this action. With this view of the testimony, it is not necessary to investigate the law questions involved. The judgment of the lower court is reversed, and the case remanded, with instructions to the court to enter judgment for the defendant for costs.

ANDERS, C. J., and HOYT, STILES, and SCOTT, JJ., concur.